IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2008 OCT 21  P 4:07

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

**RICHARD GRANT SR.**
6 400 Baltimore National Pike #325
Baltimore, Maryland 21228

    Plaintiff

v.                                                   Civil Action No. RDB 08 CV 2791

**ISEC, INCORPORATED**
9305 Gerwig lane
Columbia, MD 21046

    Defendant

## COMPLAINT FOR DISCRIMINATION IN EMPLOYMENT

### JURISDICTION

1.      This is an action alleging, inter alia, that Plaintiff, RICHARD GRANT, pro se, (hereafter "Mr. Grant" or "Plaintiff") was discriminated against in the course of his employment because of his race in violation of his rights under Title VII the Civil Rights Act of 1964, 42 U.S.C. s 2000e, et seq., (hereafter "Title VII") and his age (60 at the pertinent time) in violation of the Age Discrimination Act, 29 U.S.C. ss 621, et seq. (hereafter "ADEA").  This Court has jurisdiction pursuant to 29 U.S.C. ss 626(c) and 42 U.S.C. 2000e.

2.      Plaintiff's claims concern violations by the Defendant Isec, Incorporated (hereafter "Isec" or "Defendant") of Plaintiff's federal rights under Title VII.. Thus this

Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C.ss 1331 (federal question jurisdiction).

## VENUE

3. Plaintiff was employed by the Defendant within this Defendant within this judicial district and all acts and omission constituting discrimination occurred or failed to occur within this judicial district. Accordingly, venue, pursuant to 2000e-5(f), lies within this judicial district.

4. Pursuant to 28 U.S.C. ss 1391 (b), Defendant resides in this judicial district by virtue of it's Columbia, Maryland field office and corporate registration with the state making venue proper.

5. Defendant has sufficient contacts with Maryland so as to not offend constitutional principles of due process.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff, filed a formal complaint with the United States Equal Employment Opportunity Commission (EEOC) (Charge No. # 531-2006-02535) alleging, inter alia, that he was discriminated against while in the employment of the Defendant and also when he was his employment was terminated for his original verbal and written complaints. Plaintiff has pursued his administrative remedies through and including the

issuance of a "Right to Sue" letter (designated herein as Exibit A), dated July 17, 2008, and received by the Plaintiff sometime thereafter. See Exibit A (attached).

7. Plaintiff has exhausted all required administrative procedures and protocol which are or may be required by "Title VII" and the "ADEA".

## PARTIES

8. Plaintiff, is an adult male, domiciled and residing in Maryland. His date of birth is September 22, 1946. Also, Plaintiff is a graduate of Morgan State University. The Plaintiff is a carpenter, machinist, welder, drywall finisher and hanger, sheet metal fabricator with more than 20 years experience and a former construction business owner.

9. Plaintiff was at all times relevant to this Complaint an "employee" of the Defendant within the meaning of Title VII and the ADEA.

10. Defendant is a corporation with it's corporate offices located at 33 Inverness Drive East Englewood, Colorado 80155; it's resident agent is located at The Corporation Trust Incorporated, 300 East Lombard Street., Baltimore, Maryland 21202; it's local offices is located at 9305 Gerwig Lane, Columbia, Maryland 21046.

11.     Isec is a prime trades contractor and subcontractor for specialty building interiors and equipment operating in the state of Maryland.

12.     Isec is and at all times relevant to this Compliant and is an "employer" within the meaning of Title VII and the ADEA.

## Facts Relating To The Dispute

13.     Plaintiff was employed by Defendant on or about February 29, 2006 to work as a temporary carpenter. Because Plaintiff has more than twenty years as a carpenter and has worked as a machinist, drywall finisher- hanger, foreman etc. was hired at $20.00 per hour with the proviso of a later raise on performance. Plaintiff is a former member of Local # 32 of the Carpenter's Union. Plaintiff also has a degree in Economics.

14.     On April 1, 2006 Defendant offered and Plaintiff accepted a regular carpenters position at the same pay scale of $20.00 per hour.

15.     Plaintiff was the only African American his age on the job sight and later at other job sights the only African American Carpenter.

16.     Plaintiff was employed at three different job sites; first, at Johns Hopkins University Homewood Campus (hereafter "Homewood"); Johns Hopkins Hospital

17.     Bayview-NIH PROJECT (hereafter "Bayview"); Univesity of Maryland College Park

18.        Campus (hereafter "College Park") and Isec's Warehouse Product Assembly Facility (where no incidents occurred).

19.        During the period from February 29, 2006 to July 31, 2006 plaintiff had received many compliments regarding his work ethic, attitude, production and performance from all of his superiors such as Mike Safchuck initial foreman at the Homewood jobsite; Gabe Sherman at the Bayview jobsite; Don Filinks later appointed superintendent at the Homewood jobsite and Mike Hanneke later appointed Foreman at the Homewood jobsite in place of Mike Safechuck.

20.        On or about April 28, 2006, Plaintiff was working at the University of Maryland College Park Campus when he was sent home after complaining about unsafe assignments and was being accused of stealing or losing company equipment only to later find that another employee had left the recovered tool out. The Campus Police had procession of the missing tool. This encounter was under Lou Daniels who threaten to write me up for Safety violations but was persuaded by Mike Safchuck that it was not right.

21.        On or about June 26, 2006, Plaintiff and his supervisor (Gabe Sherman) had a conversation with regards to job assignments followed-up with a letter. Mr. Sherman had erroneously assumed that Plaintiff was refusing to do work assignments. Plaintiff explained that he was not refusing any job even if it's cleaning but that with years of experience and multi-trade skills that I could do more complicated work other than crawling on the floor glueing metal strips to the floor. Plaintiff also asked about the pay raise promised him when he was hired.

22.        On Friday July 28, 2006 was told not to report to work on Saturday and Sunday as there was only enough work for a skeleton crew.

23. On Saturday July 29, 2006, Plaintiff discovers that a large contingency of Carpenters were on the jobsite; imported from jobsites as far as Virginia. Plaintiff also discovered two Spanish speaking men working out of his tool box utilizing Plaintiffs tools to perform the very same task that Plaintiff had been performing all week.

24. On the following Tuesday, Plaintiff questioned his exclusion from the overtime workforce and was told pretext rally that even though Plaintiff had worked the previous four work days that the employment action was in consideration of his health. When Plaintiff asked why he was not consulted prior to this employment action he was retaliated against again and sent to the Columbia, Maryland Office.

25. Plaintiff had been advised that the last two African American men who had been sent to the office were fired without cause.

26. On or about July 31, Plaintiff filed a complaint with the Equal Employment Opportunity Commission, Baltimore Field Office.

27. On or about August 1, 2006 Plaintiff met with Jeff Morrow, Field Installation Manager and Joe Baker (Title Unknown) to discuss the events at Homewood. Mr.Morrow attempted to excuse the employment action as a supervisory privilege and Plaintiff's health. Mr. Morrow also suggested that other persons had questioned my absence, tardiness and work quality but offered no specifics about the job function, the job site or the supervisory personnel that made such allegations.

28. Mr. Morrow placed Plaintiff on administrative leave and requested that Plaintiff provide a doctor's statement of Plaintiff's limitation. Plaintiff complied-doctors statement shows no limitations.

29.     On July 8, 2006 Plaintiff was reassigned to Homewood, even though he had been thrown off the job previously by Don Filinks. Mr. Filinks assigned the Plaintiff a solo job assignment denying the Plaintiff the benefit of building plans' piecemeal instructions sometimes after the fact that resulted in Plaintiff's installing goods not according to plan. Thus setting up plaintiff to appear incompetent to the Company, to his peers and to his superiors.

30.     Again, Plaintiff complained in writing to Richard Springer Vice-President of Human Resources and Jeff Morrow, Field Installation Manager and again Plaintiff was placed on administrative leave while his allegation's are being investigated

31.     On or about August 21, 2006 Plaintiff met with Richard Springer and Jim Mcallister, Vice President Eastern Region to discuss the results of their investigation into my allegations. Accordingly, this investigation only took into account what others said about the incidents, it confirmed that heretofore I had not been counseled directly about my performance, it cited the forced errors made by Plaintiff in the August 8, 2006 incident at Homewood and promises that "supervisors will review plans and provide training directed at improving" Plaintiffs carpentry skills. The Investigation report acknowledges mistakes and omissions were made but found that I was not treated less favorably than others.

32.     Plaintiff wrote to Richard Springer via fax stating how his investigation ignored essential facts and sequences of events that specifically demonstrate discriminatory intent.

33.     Plaintiff returned to the Bayview campus under Gabe Sherman and continued to receive demeaning and mundane work assignments, no training on new systems, assign at one point to work with the laborers unloading trucks without other

carpenters assisting as is customarily practiced. While other White and Hispanics carpenters worked in groups of two or more.

34. Plaintiff was often past over for more challenging work assignments and privileges by both younger and older less experienced White carpenters.

35. In fact, Mike Safchuck, (White male) Foreman at Homewood had no experience as a carpenter. Brad Hungerford (White male) who was hired after Plaintiff but received benefits prior to Plaintiff; had no prior carpentry experience. Robert Farrari and Robert Ashman (White Males) had far less carpentry experience than Plaintiff but were given more challenging job assignments than Plaintiff.

36. Other White and Spanish speaking carpenters were approached and requested to provide false witness with regards to Plaintiff's character, work ethic, work performance and integrity; but they refused. Plaintiff was told by one employee that " I'll come down to your house and kick your ass for siding with the Black guy". This call was made allegedly from one of the manager's house.

37. A Spanish speaking carpenter was asked to testify that Plaintiff stole tools from him.

38. Plaintiff endured continued illegal discrimination, retaliation, harassment, exclusion overtime work and pay, an alien environment, often demeaning and mundane job assignments through his illegal firing on or about November 15, 2006 for a verbal exchange off worksite with a food vendor.

39. Plaintiff's salary and benefits were reduced because of his race and age in violation of Title VII and the ADEA.

8/10

40.     As the direct and proximate result of the acts and omissions of the Defendant as described above, Plaintiff suffered loss of pay and benefits' including, but not limited to, bonuses, health insurance, transportation reimbursement and benefits; diminished future earning capacity, emotional pain and suffering, inconvience, mental anguish, loss of enjoyment of life and other nonpecuniary losses within the meaning of 42 U.S>C> 1981a.

**Wherefore,** Plaintiff, pro se prays this Court to:

1. grant judgment in his favor and against Defendant;
2. grant him declaratory and injunctive relief, including, but not limited to reinstatement to the position with Defendant which he previously held.
3. award him back and front pay, compensate him for lost benefits, and otherwise make him whole;
4. award him compensatory and punitive damages in an amount to be shown at trial;
5. award his costs and attorneys' fees incurred in bringing and maintaining this action; and
6. grant him such other and further relief as justice require.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

9/10

Respectfully submitted,

*[signature]*

Richard Grant, pro se

6400 Baltimore National Pike #325

Baltimore, Maryland 21228

443-803-9020

## Certificate of Service

Is to certify that a postage pre paid copy of this Complaint was sent to the attorneys for the Defendant Stettner Miller, P. C., Independence Plaza, 1050 17th Street, Suite 700, Denver, Colorado 80265-2008 and to the registered agent of record with the state this 20th day of October, 2008.

*[signature]*

*10 of 10*