# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MARYLAND

2008 DEC 16 P 3 21

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

**RICHARD GRANT, SR.**

**6400 BALTIMORE NATIONAL PIKE  #325**

**BALTIMORE, MARYLAND 21228**


**Plaintiff**


**V.**                                    **Civil Action NO. RDB-08-2791**


**ISEC, INCORPORATED et al.**

**9305 GERWIG LANE**

**Columbia, Maryland 21046**

**Defendant,**


**DONALD FILINKS, jointly and severally in his official capacity as**

**Foreman or**

**Superintendent**

**Defendant,**


**MICHAEL SAFECHUCK, jointly and severally in his official capacity as**

**Foreman or Superintendant**

**Defendant,**

1

GABE SHERMAN, jointly and severally in his official capacity as Foreman

or Superintendent

Defendant,


RICHARD SPRINGER, jointly and severally in his official capacity as
Director of Human Resources

Defendant,


MICHAEL HANNEKE, jointly and severally in his official capacity as
Foreman orSuperintendant

Defendant,


JAMES MC ALLISTER, jointly and severally in his official capacity as Vice-

 President of Eastern Operations

Defendant,


JEFFEREY MORROW, jointly and severally in his official capacity as
Installation  Manager

Defendant,


LOUIS DANIELS, jointly and severally in his official capacity as Foreman
or Superintendant


Defendant,



## COMPLAINT FOR DISCRIMINATION IN EMPLOYMENT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964  THE ADEA ACT AND THE EPA ACT

### JURISDICTION

1.  This is an action alleging, inter alia, that Plaintiff, RICHARD GRANT, PRO SE, (hereafter "Mr. Grant" or "Plaintiff") was discriminated against intentionally in the course of his employment because of his race and color Black American- African in violation of his civil rights under Title VII of the Civil Rights Of 1964,42 U.S.C. §  2000e, et seq., ( hereafter "Title VII" ) , his age ( 60 years-old at the pertinent time ) in violation of the Age Discrimination  Act, 29 U. S.C. § 621, et seq.  ( hereafter "ADEA" ) and his pay - the Equal Pay Act of 1963, 29 U.S.C. § 206, et seq. (hereafter "EPA").

2.  Plaintiff claims concern violations by the Defendant Isec, Incorporated, et al,  ( hereafter "Isec" or "Defendant" ) of Plaintiff's federal rights under Title VII, the ADA and the EPA.  Thus this Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

### VENUE

3.  Plaintiff was employed by Isec, Inc. within this judicial district and all acts and omission constituting discrimination occurred or failed to

occur within this judicial district. Accordingly, venue, pursuant to 2000e-5(f), lies within this judicial district.

4. Pursuant to 28 U.S.C. § 1391 (b), Defendant resides in this judicial district by virtue of it's Columbia, Maryland field office located at 9305 Gerwig Lane and Corporate registration with the State through it's resident agent The Corporation Trust Incorporated at 300 East Lombard Street, Baltimore, MD, 21202 making venue proper.

5. Defendant, Isec, Inc. has sufficient contacts with Maryland so as to not offend constitutional principles of due process.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Mr. Grant, filed a formal complaint with the United States Equal Employment Opportunity Commission (EEOC) (Charge No. # 531-2006-02535) alleging, inter alia that he was discriminated against while in the employment of Isec, Inc. and also when he was terminated on or about November 15, 2006 due to his verbal and written complaints of discrimination. Mr. Grant has pursued his administrative remedies through and including the issuance of a "Right To Sue" letter (designated herein as Exhibit A (see attached).

7.    Mr. Grant has exhausted all required administrative procedures and protocol, which are or may be required by "Title VII", the "ADEA" and the "EPA".

## PARTIES

8.  Plaintiff is an adult American-African male, domiciled and residing in the State of Maryland. His date of birth is September 22,1946. Plaintiff is also holds a B.A. in Economics from Morgan State University. Mr. Grant is a carpenter, machinist, welder, drywall finisher and hanger, sheet metal fabricator, etc., with in excess of 20 years in the business and former construction business owner.

9.  Plaintiff at all times relevant to this Complaint an "employee" of the Defendant within the meaning of Title VII, the ADEA and the EPA.

10. Isec is a corporation with it's corporate offices located at 33 Inverness Drive East, Englewood, Colorado 80155; it's resident a located in Baltimore, Maryland and it's local offices in Columbia, Maryland. Established in 1967, Isec, Inc. is a leading national prime trades contractor and sub-contractor for specialty building interiors and equipment in the State of Maryland and through out the United States.

11. The Defendant ( Isec ) is and at all times relevant to this Compliant and is an "Employer" within the meaning of Title VII, the ADEA and the EPA.

12. The Defendant, Donald Filinks, was the superintendant at the Johns Hopkins University Homewood Campus, ("hereafter Homewood" ) when Plaintiff was assigned there the second and third tour of duty and who along with Michael Hannekee denied Plaintiff the opportunity to work over-time with subsequent retaliatory harassment.

13. The Defendant, Michael Safechuck, was the foreman-superintendant at Homewood during Plaintiff's initial tour of duty and who

discriminated against the plaintiff later at Johns Hopkins Hospital
Bayveiw Campus ("hereafter Bayview")

14. The Defendant, Gabe Sherman was the Foreman-Superintendant at
    the Bayview during the defendant's first and second tour of duty at
    this jobsite.  Mr. Safechuck assisted Mr. Sherman at this same jobsite
    during plaintiffs' second tour of duty.  It was at this Jobsite that
    plaintiff initially complained about being assigned duties that were of
    a lesser technical nature than whites who were similarly and not
    similarly situated (those that were younger and less experienced).

15. The Defendant, Michael Hanneke was assistant to Michael Safechuck
    during Plaintiff's first tour of duty at Homewood Campus.  Mr.
    Hanneke was involved with the denial of Plaintiffs civil right to an
    equal opportunity to work overtime during Plaintiff's second tour of
    duty at Homewood under Don Filinks.

16. The Defendant, Richard Springer was at the time of Plaintiffs
    employment Director of Human Services who investigated the
    Plaintiff's allegations and wrote a finding that essentially denied the
    Plaintiff's allegations made no recommendations or actions to change
    the plaintiff's alien and hostile discriminatory environment.

17. Jim Mc Allister, was the Vice-President of Eastern Operations and who
    had also investigated the Plaintiff's allegations; denying these
    allegations made no recommendations and/or actions to change the
    Plaintiff's alien and hostile discriminatory environment.

## FACTS RELATED TO THE DISPUTE

18. The Defendant, Isec, Inc employed plaintiff on or about February 29, 2006 to work as a temporary carpenter employee full-time. Because the Plaintiff has over 20 years as a carpenter, has been employed as machinist, drywall finisher and hanger, foreman, assistant superintendant etc.; was hired at $20 per hour with the proviso of a raise later based on performance by Jeff Morrow in answer to an advertisement in the newspaper. Mr. Grant also has a B. A. in Economics from Morgan State University, in Baltimore, MD in 1970.

19. On April 1, 2006 Defendant, Isec, Inc. offered and Plaintiff accepted a position as a permanent (regular) full-time carpenter at the Johns Hopkins University Homewood Campus ("hereafter Homewood") after making the cut during the temporary period but at the same pay of $20.00 an hour with no raise in salary for good performance.

20. Mr. Grant, the Plaintiff was the only American of African decent at times and at different jobsites during his tenure with Isec, Inc., the Defendant.

21. The Plaintiff, experienced no discriminatory activity at the Isec, Inc., Warehouse facility to the best of his knowledge and belief.

22. During the period from February 29, 2006, Plaintiff (Mr. Grant) had received numerous verbal compliments regarding his good work ethic, attitude, production and performance from all his superiors such as Mike Safechuck, Gabe Sherman, Don Filinks and Mike Hanneke with one exception- Lou Daniels prior to the incident at Homewood.

23. On or about April 28th, 2006 , the Plaintiff (Mr. Grant) was assigned to work at the University of Maryland College Park Campus when he was sent home early in the work day by Louis Daniels after complaining about unsafe job assignments and stealing or losing company

property (an eighteen volt Dewalt Drill) only to learn later that the employee who had the drill last had left it on the wall of the parking lot. The Campus Police had custody of the recovered tool. Mr. Daniels then threatened to write Mr. Grant up for a Safety Violation, but was later persuaded not to.

24. On or about June 26, 2006, Plaintiff and Mr. Gabe Sherman had a conversation with regards to work assignments, which was followed up with a letter by Plaintiff. Mr. Sherman had erroneously assumed that The Plaintiff (Mr. Grant ) was refusing to do work assignments. Plaintiff explained, during this conversation, that he was not refusing any job even if it's cleaning but that with Plaintiff's years of experience and his multi-trade skills that he (the Plaintiff) could do more complicated work carpentry task other than kneeling down gluing metal strips to the concrete floor. The Plaintiff also, asked about the pay raise promised him (the Plaintiff) when he was hired by Jeff Morrow; back in February.

25. On July 28th, 2006, in the parking lot where most employees parked while working at the Homewood jobsite and at the end of the work day, the Plaintiff, was told not to report for work that Saturday and Sunday as there was only enough work for a skeleton crew by Michael Hannekee.

26. On Saturday, July 29, 2006, Plaintiff goes to the Homewood jobsite unexpectedly and discovered that a large contingency of Isec. Inc. Carpenters were working on the Homewood jobsite; imported from jobsites as far as Northern Virginia. Mr. Grant also discovered that two Spanish speaking men were uncustomarily working out of his personal tool box utilizing his tools to perform the very same task that he had been performing competently for the previous two weeks.

27. On the following Tuesday, when the Plaintiff returned to work; he posed the question to Mr. Hanneke while Mr. Filinks stood by- " why was I told not to come in to work?" Mr. Filinks interrupted and stated pre-texturally, that Mr. Grant's exclusion was due to the fact that he was out the previous Monday, due to health issues. When Mr. Grant asked why he was not consulted prior to this employment action; he was told by Mr. Filinks to get off the jobsite and report to the Columbia, Maryland to see Jeff Morrow in retaliation for asking a simple question.

28. The Plaintiff had learned the visit to Columbia, Maryland could be the precursor to discharge.

29. Mr. Grant in order to preserve his civil rights filed his initial complaint with the EEOC, Baltimore field office on or about July 31, 2006.

30. On or about August 1, 2006 The Plaintiff (Mr. Grant) met with Jefferey Morrow, Field Installation Manager and Joe Baker (Title Unknown) to discuss the incident at the Homewood Campus. Mr. Morrow attempted to excuse away the employment action as a supervisory privilege and the Plaintiff's health as the first pretext. Mr. Morrow, also, suggested that other personnel had questioned the Plaintiff's absence and tardiness record along with his work quality but offered no specifics about the job function, the jobsite or supervisory personnel that had made these representation to him as a second pre-text.

31. Mr. Morrow placed Plaintiff (Mr. Grant) on administrative leave and requested that the Plaintiff provide a Physician Statement as to the nature of his limitations. The Plaintiff complied. The Physician's Statement showed that Mr. Grant had no physical limitations that would have precluded him from performing his job duties.

32. On or about July 8, 2006, Mr. Grant was re-assigned to the Homewood
    Campus job site even though, Mr. Don Filinks the Superintendant
    threw him off the jobsite previously. This may not have made Mr.
    Filinks too happy. This was an open affront to Mr. Filinks authority on
    the jobsite. Mr. Filinks separated the Plaintiff from the other
    carpenters and assigned him (Mr. Grant) a solo project installing three
    base cabinets, spacers and a eight-foot counter while denying the
    Plaintiff the benefits of jobsite floor plans and elevation drawings.
    Instead Mr. Filinks only provided piece-meal directions that were
    sometimes provided after the fact. Such as, informing the Plaintiff
    that the spacers were to be installed after the Plaintiff had already
    installed the three cabinets. This required that the installed cabinetry
    be carefully un-installed and then re-installed resulting in
    misalignment of the holes cut in the back of the cabinetry for electrical
    boxes. Thus, setting-up the Plaintiff to appear incompetent to the
    Company, his subordinates, his peers, and his superiors; in retaliation
    for the Plaintiff's returning to the jobsite against Mr. Filinks previous
    directive. Once again, the Plaintiff complained in writing to Richard
    Springer, Director of Human Resources and Jeff Morrow, Installation
    Manager for Defendant, Isec, Inc. The result was that the Plaintiff (Mr.
    Grant) was placed on administrative leave while they investigated his
    allegations.

33. On or about August 21, 2006 Mr. Grant met with Richard Springer,
    Director of Human Resources and Jim Mc Allister, Vice-President
    Eastern Region to discuss the results of their investigation into Mr.
    Grants' allegations of unequal treatment, retaliatory harassment and
    humiliation. Accordingly, this investigation only restated much of the
    previously uttered pretexts. The report confirmed that I had not been
    counseled about my performance, heretofore. However, it cited
    forced errors (the set-up engineered by Don Filinks ) made by Plaintiff

in the August 8, 2006 incident at Homewood Campus, instead of counseling or reprimanding Mr. Filinks for gross misconduct and abuse of power in violation of Company Policy and local, state and federal laws. Mr. Filinks behavior should have even been, grounds for his dismissal. The report also goes on to promise that "supervisors will review plans and provide training at improving" the Plaintiff's carpentry skills. The Plaintiff complained about job assignment not a need to be trained in carpentry skills. However no attempt was made to carry out this promise at anytime nor anyhow. Finally, the Investigation's report acknowledges (the differential treatment ) that mistakes and omissions were made but found that the Plaintiff "was not treated less favorably than others".

34. Subsequently to this meeting the Plaintiff wrote to Mr. Springer via fax stating that his investigative report ignored essential facts and sequences of events that specifically demonstrate the intent of certain, but not all, management personnel to commit acts of discrimination against Mr. Grant. This would render Mr. Springer and Jim Mc Allister both co-conspirator in this illegal scheme by default.

35. Plaintiff was re-assigned to the Bayview jobsite where he had previously complained about menial work assignments to Gabe Sherman on or around June, 2006 but continued to receive mundanely demeaning work assignments, not allowed to train on and install new product systems and at one point, assigned to work with the laborers while other similarly and non-similarly situated white carpenters and junior carpenters were given more favorable work assignments.

36. Plaintiff was often passed over for more challenging work assignments and privileges of employment at "Bayview" while both younger and older, less experienced white carpenters were trained in new systems and installations.

11

37. Michael Safechuck, white male, and Foreman at the Homewood jobsite had no prior job experience as a carpenter.

38. Brad Hungerford, white male, had no prior job experience as a carpenter but was trained and assigned more challenging job assignments while Plaintiff was assigned to glue strips of metal to the concrete floor. Brad was also vested in Isec, Inc.'s benefit plans prior to the Plaintiff though hired after Plaintiff.

39. Robert Farrari and Robert Ashman, who worked together, had little carpentry experience were trained in new systems and installations while receiving more challenging carpentry work assignments.

40. White and Spanish- speaking carpenters were approached by Isec, Inc.s' management and non-management personnel to provide false testimony with regards to Plaintiff's character, work ethic job performance etc. but they refused. One employee was admonished and threatened with violence "for siding with the black guy". This call was made from a manager's house, allegedly.

41. One Spanish -speaking carpenter was asked to testify that the Plaintiff had stole tools from him.

42. Plaintiff endured unequal and differential treatment , isolation from peers, retaliation, harassment, embarrassment, disparate treatment, intimidation, pain, suffering, humiliation, excessive scrutiny, illegal discharge and other effects of discrimination.

43. Plaintiff's alary and benefits were reduced because of his race, color and age in violation of Title VII, the ADEA and the EPA.

44. As a direct and approximate result of the acts and omissions of the Defendants Isec. Inc. et al as described above, Plaintiff suffered loss of pay and benefits' including , but not limited to, bonuses, health

insurance, transportation reimbursement and benefits; diminished future earnings capacity, emotional pain and suffering, inconvinence, mental anguish, loss of enjoyment of life and other nonpecuniary losses within the meaning of 42 U.S.C. 1981 a.

**Wherefore,** Plaintiff, Richard Grant Sr.. pro se prays this Court to:

1. Grant judgment in his favor and against the Defendants, Isec. Inc.,   et al;

2. Grant him declaratory and injunctive relief, including, but not limited to reinstatement to the position with Defendant, Isec, Inc.

3. Award him back and front pay, compensate him for lost benefits, and otherwise make him whole;

4. Award him compensatory and punitive damages in an amount to be shown at trial;

5. Award him cost and attorney's fees incurred in bringing and maintaining this action;

6. and grant him such other and further relief as justice require.

Respectfully Submitted

pro se

RICHARD GRANT Se. pro se
6400 BALTIMORE NATIONAL Pike #325
BALTIMORE, MD 21228
443-803-9020
CGRANT 733@ YAHOO. COM

13

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

Richard Grant Sr., pro se

6400 Baltimore National Pike  #325

Baltimore, Maryland 21228

443-803-9020

Grant 333@
yahoo . com